**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| C2 COMMUNICATIONS | § | |
| TECHNOLOGIES, INC., | § | |
| | § | |
| vs. | § | Case No. 2:06-CV-241 |
| | § | |
| AT&T, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

**1.      Introduction**

In this case, C2 Communications Technologies, Inc. ("C2") asserts various claims from U.S.

Patent No. 6,243,373 ("the '373 patent") against the defendants.  The '373 patent, entitled "Method

and Apparatus for Implementing a Computer Network / Internet Telephone System," was filed on

November 1, 1995, and issued on June 5, 2001.  Mr. David L. Turock is the only inventor named

on the '373 patent.

**2.      Background of the Technology**

The '373 patent is generally directed to methods and equipment for routing duplex telephone

calls over the public switched telephone network ("PSTN") and a public computer network, such

as the Internet, in a way that is transparent to both the caller and the called party.  '373 patent at

7:18-35.  The invention accomplishes its directive by integrating a specialized computer system with

the traditional PSTN so that calls from a telephone are converted to an Internet protocol, routed over

the public computer network, and then converted back to the traditional telephone network protocol

to complete the call.  '373 patent Abstract, 7:18-35.  The specialized computer systems of the

invention, which are also called computer access ports or ITS nodes, serve as interfaces between the

public computer network (or Internet) and the standard telephone system, thereby enabling the

1

transmission of telephonic voice communications over the Internet.

A full duplex telephone call of the invention can be established by routing the call from a calling party, over the PSTN to a first ITS node, from the first ITS node over the Internet to a second ITS node, and from the second ITS node over the PSTN to the called party.  Once the call reaches the called party, a full duplex connection between the callers is established.  A goal of the invention is to minimize long distance telephone rates by essentially connecting two local calls via the Internet.  In accordance with this goal, each portion of the call between a caller and his or her respective ITS node would incur the charge for a local telephone call, and the communication link over the Internet would replace the traditional long distance portion of the call thereby reducing or eliminating the long distance surcharge normally attendant with long distance telephone calls.  In the written description, the '373 patent describes two main embodiments, a two-number dialing embodiment and a one-number dialing embodiment.

In accordance with the two-number dialing embodiment, the caller will place a first telephone call to the first ITS node, which has its own telephone number.  This call will be connected through a central office and/or over the PSTN.  When the first ITS node answers the call, a complete two-way call between the caller and the first ITS node is established, and the first ITS node will thereafter prompt the caller to enter the telephone number for the called party.  Using the provided number, the ITS node will negotiate a call setup with a second ITS node located in the vicinity of the called party, thereby establishing a communications link over the Internet between the first and second ITS nodes.  The second ITS node will then place a call to the called party to establish a second, completed telephone call with the called party.  Once the called party answers the second telephone call, the two telephone calls and the communications link are joined to

establish a full duplex telephone call between the two callers.  The ITS node therefore provides call setup capabilities and converts voice data from the traditional protocol of the PSTN to an Internet protocol.

The one-numbering dialing embodiment is similar to the two-number dialing embodiment described above.  The main difference between the two embodiments is that the one-number dialing embodiment consolidates the two outbound dialing steps into a single step.  In the one-number dialing embodiment, for example, the step of dialing the first ITS node is consolidated with the step of entering the number of the called party at the ITS node.  This consolidation of steps adds an additional level of transparency into the claimed call routing system in order to make the system resemble traditional long distance telephony.  In a preferred embodiment, the two steps are consolidated by connecting the first ITS node directly to the central office or a private branch exchange ("PBX") that services the caller.  This direct connection allows the caller to pick up his or her telephone and dial the number of the called party instead of first dialing the number of the ITS node.

As originally filed, the '373 patent contained two independent claims, each covering both of the calling embodiments described above.  During prosecution, Mr. Turock amended both independent claims to exclude the two-number dialing embodiment from their scope.  Therefore, the issued claims are directed to the more transparent one-number dialing system described above.  Unfortunately, the bulk of Mr. Turock's written description is directed to the operation of the various two-number dialing embodiments.  As such, only a small portion of the written description is directed to the claimed one-number dialing embodiments.  *See* '373 patent at 7:18-35.  In part because of this minimal description, the claims are especially helpful to a garner a full understanding

of Mr. Turock's invention.  The following independent claim is illustrative:

> 1.      A method of routing a full duplex telephone call between a first telephone set and a second telephone set using a public computer network as at least part of a communication link connecting said first and second telephone sets, comprising the steps of:
>
> receiving at a first computer network access port a first telephone call from a central office placed from said first telephone set initiating said full duplex telephone call, said first telephone call specifying a telephone number of said second telephone set, without specifying additional telephone destinations;
>
> converting data received from the central office to an Internet protocol;
>
> establishing a communication link over said public computer network between said first computer network access port and a remote second computer network access port;
>
> placing a second telephone call from said second computer network access port to said second telephone set using a PSTN;
>
> converting data received from the public computer network from Internet protocol to a PSTN protocol; and
>
> connecting said first telephone call, said communication link and said second telephone call to thereby establish a telephone call between said first telephone set and said second telephone set.

'373 patent, claim 1.

### 3.      General Principles Governing Claim Construction

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999).  Claim construction is an issue of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history.  *Markman*, 52 F.3d at 979.  Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention.  A patent's claims must be read in view of the specification,

of which they are a part. *Id.*  For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims.  Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (*en banc*).  The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992).  And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(*en banc*).  In *Phillips*, the court set forth several guideposts that courts should follow when construing claims.  In particular, the court reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (emphasis added)(quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.*  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.* as of the effective filing date of the patent

application." *Id.* at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention.  The patent is addressed to and intended to be read by others skilled in the particular art. *Id.*

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation.  The prosecution history helps to demonstrate how the inventor and the PTO understood the patent.

*Phillips*, 415 F.3d at 1317.  Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings.  *Id.*  Nevertheless, the prosecution history is intrinsic evidence.  That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes.  *Id*. at 1319-24.  The approach suggested by *Tex. Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term.  *Id.* at 1320-21.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of the claim terms within the context of the patent."  *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter.  *Id*.  What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented.  *Id.*  The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word.  *Id.* at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings.  Instead,

the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language.  *Id*. at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

**4.      Discussion**

**A.      telephone call; first telephone call; second telephone call; placing a second telephone call from said second computer network access port to said second telephone set; connecting said first telephone call, said communications link and said second telephone call to thereby establish a telephone call between said first telephone set and said second telephone set**

The term "telephone call" appears in seven of the contested phrases and is central to the parties' disagreement over the meanings of those phrases.  The parties' proposed construction for this term varies with the seven contested phrases.  The essential disagreement of the parties, however, is whether the term "telephone call" requires an actual two-way communication or whether, in certain contexts, it simply refers to a demand to set up a telephone connection.  The defendants sponsor the former construction, and the plaintiff urges the latter.  The parties' respective constructions are set forth below.

In the context of a "first telephone call" and a "second telephone call," the plaintiff proffers a construction of "a first demand to set up a telephone connection" and "a second demand to set up a telephone connection."  The defendants' counter-construction of "first telephone call" is "a telephone call, separate from a second telephone call, which is established before a second telephone call is placed."  The defendants' proposed counter-construction of "second telephone call" is "a

telephone call, separate from a first telephone call, which is placed after a first telephone call is established."

For the term "connecting said first telephone call, said communication link and said second telephone call to thereby establish a telephone call between said first telephone set and said second telephone set," the plaintiff proposes "connecting the first demand for connection, the physical or logical connection between the first and second computer network access ports, and the second demand for connection to thereby establish an arrangement providing for the telephonic exchange of information between the first telephone set and the second telephone set" as a construction.  The defendants' counter-construction is simply "bridging the first telephone call and a separate, second telephone call to establish a telephone call between the first telephone set and the second telephone set via the communication link."

The plaintiff argues that the claim refers to a method for "routing a full duplex telephone call between a first telephone set and second telephone set . . . comprising the steps of . . . ."  According to the plaintiff, use of the term "routing" in the preamble implies that the claim is focused on the flow of signals necessary to establish a two-way telephone call.  The plaintiff also points to the language of the claim limitations, which require (1) "receiving at a first computer network access port a first telephone call from a central office . . ." and (2) "placing a second telephone call from said second computer network access port to said second telephone set . . . ."  The plaintiff maintains that it makes little sense for the claim to require the "receipt" or "placement" of an already *established* two-way telephone call.  Finally, the plaintiff bolsters its argument by pointing to the last limitation of claim 1, which states "connecting said first telephone call, said communication link and said second telephone call *to thereby establish a telephone call* between said first telephone set

and said second telephone set." The plaintiff argues that the italicized phrase reflects that the call

set-up phase has occurred and the connection is complete. At the same time, the plaintiff notes that

the claim does not recite the steps for establishing intermediate, two-way connections between the

telephone sets and the respective computer network access ports. Plaintiff's Opening Brief at 10.

In response, the defendants assert that term "telephone call" is used multiple times in each

of the two independent claims, and that the term should have a consistent meaning throughout the

claims. The defendants thus argue that the plaintiff's constructions would result in different

meanings for the same claim term. The defendants further assert that the specification and

prosecution history supports their construction of this term.

In particular, the defendants suggest that the description of the two-stage dialing embodiment

implies that claims require the "establishment" of two separate telephone calls. In describing the

two-stage dialing embodiment, the specification states:

> As shown in FIG. 2, computer network telephone transmission
> system 200 is used to provide telephone service between calling
> station 202 and called station 204. Initially, the user at the calling
> station dials the number of the specialized computer ITS node 206 at
> an Internet access port. The local switching office 208 routes the call
> through PSTN 210 to central office 212 which services specialized
> computer ITS node 206. *At this point, a call has been established* by
> way of PSTN 210 between the calling station 202 and the specialized
> computer ITS node 206.

'373 patent, 6:33-43 (emphasis added). Although the patentee disclaimed this embodiment, the

defendants point to the description of the one-stage dialing embodiment to support their argument.

As defendants characterize this embodiment, a calling party's telephone set is "hardwired" to a

specialized switch through a private branch exchange. '373 patent, Fig. 3. In such an embodiment,

the calling party need only dial the number of the called party–the need to dial the number of the

computer node is eliminated through the hardwiring process.  According to the defendants, the first telephone call is still established between the calling party's set and the computer node by the direct connection.  The defendants also point to the written description in which a call placed from the opposite end of the connection would still need to first dial the number of the specialized switch. '373 patent, 7:33-35 ("Of course, calls placed at location 202 must still first dial the telephone number of specialized switch 206, as described above.").

Although the specification is largely devoted to the two-number dialing embodiment, the description uses the term "telephone call" in the manner that the plaintiff suggests is proper.  *See, e.g.*, '373 patent at 12:29-33 ("Referring now to FIG. 6, the ICM receives an inbound call indication from the TNIM at step 602.  This indicates that the calling party has *initiated* a telephone call.  At step 604, the ICM instructs the TNIM to answer the call.") (emphasis added).  This passage suggests that the call that is "initiated" (or placed) need only be the demand for a connection.[1]  In view of the language of the claims, read in light of the specification and the prosecution history, it appears that the patent uses the term "telephone call" in different ways, depending on the context in which the

---

[1]      Similarly, the court rejects the prosecution history estoppel arguments raised by the defendants.  The defendants base their arguments on certain statements in the prosecution history that are exemplified by the following passage: "Further, the [claimed] invention . . . requires that a first telephone call be placed from the first telephone set *to a first computer network access port*. Williams [a prior art reference] does not appear to disclose such an element.  In contrast, Williams discloses the use of a channel bank . . . which scans the telephone instruments . . . in a 'continuous round robin fashion' to sense an off-hook condition which may initiate a call request . . . .  Similarly, the [claimed] invention . . . *requires that a second telephone call be placed from the second computer network access port to the second telephone set*."  Defendants' Response at A86 (Appeal Brief dated May 15, 2000) (emphasis added).  As is evident from this passage, the claims at issue included several limitations that were relied upon by the patentee to distinguish the Williams reference.  Therefore, the patentee's statements do not clearly reflect the patentee's intent to limit the scope of his claims to require separate two-way calls, although portions of those statements, when viewed in isolation, are capable of such a reading.  *See Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003) (noting that an amendment to a claim may indicate the patentee's intent to limit his claims).

term is used.  As such, the court construes the term "receiving at a first computer network access port a first telephone call" to mean "receiving at a first computer network access port a first demand to set up a telephone connection."  Likewise, the court construes "placing a second telephone call from said second computer network access port to said second telephone set" to mean "placing a second demand to set up a telephone connection from the second computer network access port to the second telephone set."  However, the patentee used the term "telephone call" differently in the term "to thereby establish a telephone call."  In that instance, the call that is "established" references an actual two way communication of information.  As a result, the court construes the term to mean "to thereby establish a two way telephonic exchange of information."[2]

### B.    public computer network; Internet protocol

The claims require establishing a communications link over a public computer network and converting data received from the central office to an Internet protocol.  '373 patent, claim 1 ("establishing a communication link over said public computer network . . ." and "converting data received from the public computer network from Internet protocol to a PSTN protocol.");  '373 patent, claim 13 ("a communication link over a public computer network. . ." and "a first protocol conversion module converting data received from the central office to an Internet protocol.").  The parties dispute the definitions of the terms "public computer network" and "Internet protocol."

The plaintiff's proposed construction of the term "public computer network" is "a computer network available to the public."  The defendants' counter-construction is "the ARPANET or the Internet."  The defendants argue that these are the only two public computer networks that have existed since the date of the application; therefore, they argue it is appropriate to limit the scope of

---

[2]    The court's constructions of "telephone call" apply equally to the similar limitations appearing in claim 13.

the claims to such networks.  The plaintiff disagrees and points to the language of certain dependent claims which specifically call out the Internet as the computer network.  In light of the language of dependent claim 6, which recites that "said computer network is at least a portion of an Internet computer network," the court rejects the defendants' proposed construction.  The court defines the term "public computer network" to mean "a computer network available for use by the general public."

The parties also dispute the meaning of the term "Internet protocol."  Originally, the plaintiff contended that the term meant "a communications format used to transmit data on the Internet (e.g. TCP/IP and/or UDP/IP)."  The defendants contended that the term meant "Internet Protocol, versions 1 through 9."  After the claim construction hearing, the plaintiff filed a notice indicating it agreed to the defendants' proposed construction of this term.  Any "agreement" was short-lived, however, as the defendants' response was to withdraw their prior construction.  They attempted to adopt the plaintiff's originally proposed construction or the construction suggested by the court at the claim construction hearing.  Despite the parties' shifts in positions, the court construes claims as a matter of law and is not bound by the parties' proposals or their agreements.  The claim language, read in light of the specification, indicates that the term means "a communications format capable of transmitting data over the Internet."

### C.    central office

The parties also dispute the meaning of the term "central office."  The plaintiff contends that the term means "a switching system that terminates a common carrier's customer lines."  The defendants contend that the term means "a local switching system in a telephone company building which connects individual subscriber wires to trunks and to other individual subscriber wires."

The patent states:

> Each customer line terminated in a local switching system commonly referred to as a central office (CO).  The central office then performed the task of connecting each of the telephone lines it served to a corresponding telephone line in order to complete a call.  If the two parties to a call were serviced by the same central office, then the connection could be completed by the same central office without having to resort to other portions of the telecommunications network.  If the call required connection to a telephone line serviced by a distant central office, then a connection between the central offices was carried out using a trunk, i.e., a connection between two central offices.

'373 patent at 1:22-33.

In addition to the explicit discussion in the specification, the patent incorporates by reference certain materials.  '373 patent at 1:63-65 (incorporating by reference the contents of John Bellamy, *Digital Telephony* (John Wiley & Sons 1991)).  This source includes a glossary defining "central office" as follows:

> **Central office**.  Usually used to refer to a local switching system that connects lines to lines and lines to trunks.  It may be more generally applied to any *network switching system*.  The term is sometimes used loosely to refer to a telephone company building in which a switching system is located and to include other equipment (such as transmission system terminals) that may be located in such a building.

John Bellamy, *Digital Telephony* (John Wiley & Sons 1991) (emphasis original).  Read in light of the explicit discussion in the specification, the first definition of "central office" given in the glossary appears to be the most appropriate one.  As such, the court construes "central office" to mean "a local switching system that connects customer lines to customer lines and customer lines to trunks."

### D.    PSTN

The plaintiff contends that no construction of the term "PSTN" is necessary but offers an alternative construction of "a telephone network in which connections are established as and when

14

required and that is supplied, operated, and controlled by one or more telecommunications operating companies to provide telephone service that is available to the public." The defendants contend that the term "PSTN" should be construed to mean "the circuit-switched transmission and switching facilities that link central offices." The defendants' construction would exclude central offices from the PSTN.

The defendants contend that Mr. Turock acted as his own lexicographer when describing the term "PSTN" in his patent's specification. In this regard, the defendants cite to Figures 2, 3, and 4, which depict a "PSTN" as a link between central offices, as opposed to the network which links user telephones. The defendants also point to claim 2, which depends from independent claim 1. Claim 1 requires a "first telephone call" to be received from "a central office." Claim 2 further requires the "first telephone call" to be received from "a public switched telephone network." The defendants therefore contend that claim differentiation requires the "PSTN" to be separate from or exclude the "central offices." In this regard, the defendants argue that claim 1 describes the situation where the "first computer network access port" resides at the central office, and that claim 2 describes the situation where the "first computer network access port" resides a distance from the "central office." Under the latter configuration, the defendants argue, that "the first telephone call" must leave the "central office" and travel over the "PSTN" to reach the "first computer network access port."

In response, the plaintiff contends that the term "PSTN" is commonly understood by one of skill in the art to mean "the entire public telephone network," and that Mr. Turock's use of that term in the specification is consistent with this industry definition. The plaintiff also contends that the specification excerpts cited by the defendants do not clearly redefine the term "PSTN" as proposed

by the defendants.  *See In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (requiring "reasonable clarity, deliberateness, and precision" on the part of the inventor in order to redefine a term that has a commonly understood meaning in the art.).  Instead, the plaintiff points to other specification passages that contradict the defendants' proposed construction, such as the following passage which suggests that a "PSTN" includes one or more central offices: "The present invention allows anyone with a standard telephone connected to the public switched telephone network (PSTN) to communicate with any other telephone . . . ."  '373 patent at 5:20-23.

The plaintiff also points to claim 1 to support its inclusive definition of a "PSTN," which requires the placement of "a second telephone call" from "a second computer network access port" to "a second telephone set" using a "PSTN."  This claimed embodiment, the plaintiff argues, indicates the inclusive nature of a "PSTN" because the claim does not separately require two "central offices," the first near the "second computer network access port" and the second near the "second telephone set."  In this regard, the plaintiff contends that one of skill in the art would define "PSTN" to include many "central offices."

In view of the above, the court concludes that Mr. Turock did not assign a special meaning to the term "PSTN" in his patent specification, and that this term should therefore carry its meaning as understood by one of skill in the art.  In this regard, Mr. Turock's choice to separately depict and claim certain "central offices" is not necessarily inconsistent with a "PSTN" that includes multiple "central offices."  It is instead a reflection of Mr. Turock's choice to highlight certain of the "central offices" that he felt would convey an understanding of the attributes of his claimed invention.  The court therefore defines the term "PSTN" to mean "the entire public telephone network that includes both central offices as well as those facilities or equipment that link central offices."

**E.**     **said first telephone call specifying a telephone number of said second telephone set**

The plaintiff contends that this term means "said first demand for connection specifying the telephone number of the second telephone set."  The defendants contend that this term means "dialing the telephone number of the called party, where in-channel signaling is employed to transmit that telephone number via the first telephone call received at the first computer network access port."

The defendants' construction would incorporate two limitations–the requirement that the number be "dialed" as well as a requirement that "in-channel signaling" be used to transmit the telephone number of the called party.  The defendants fail to support this latter requirement in their brief, and the claim limitation does not require the number to be "dialed."  As a result, and in view of the court's construction of "telephone call," the court adopts the plaintiff's construction for this term.

**F.**     **first and second telephone switches; computer network telephone switch.**

Claims 7 and 8 are dependent claims.  Claim 7 requires in part "[t]he method of claim 6 wherein said first and second computer network access ports *are first and second telephone switches* . . . ."  '373 patent, claim 7 (emphasis added).  Claim 7 also requires "transmitting call setup information from said call initiation module to *said second computer network telephone switch . . . ." Id.* (emphasis added).  Claim 8 requires "[t]he method of claim 7 further comprising the step of: determining the least cost routing procedure for routing said first telephone call from said *first computer network telephone switch* to said second telephone set."  '373 patent, claim 8 (emphasis added).  The plaintiff contends that the term "first telephone switch" is synonymous to "first

computer network telephone switch" and the term "second telephone switch" is synonymous to "second computer network telephone switch."  The defendants contend that the claims are indefinite because the terms "first and second computer network telephone switches" lack antecedent basis in the claims.  The court is persuaded, however, that one of skill in the art would read the claims in the manner proposed by the plaintiff.  As such, the court rejects the indefiniteness argument.  *Energizer Holdings, Inc. and Eveready Battery Co., Inc. v. International Trade Comm'n*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006).

Alternatively, the defendants contend that the terms "first and second telephone switches" should be construed to mean "first and second devices used for opening, closing, or changing the connection of one or more circuits related to telephone communications."  The plaintiff contends that the term "switch" needs no further construction.  The court agrees with the plaintiff.  Absent some showing that there is a dispute as to claim scope over the meaning of these terms, the court declines to construe the terms "first and second telephone switch."

### G. first protocol conversion module converting data received from the central office to an Internet protocol; second protocol conversion module converting data received from the public computer network from Internet protocol to a PSTN protocol

The "protocol conversion module" terms are present in independent claim 13.   The defendants contend that these terms should be construed in accordance with Section 112(6) because of the inclusion of the term "module" within each term.  The defendants go on to suggest that the "conversion modules" execute software to achieve the claimed functionality, and that the specification fails to disclose adequate structure corresponding to the software functionality, *i.e.* a software algorithm.  The defendants therefore contend that claim 13 is invalid.

The plaintiff contends that the "protocol conversion module" terms are not written in means-

plus-function form, and that they are therefore not subject to the provisions of Section 112(6).  The plaintiff's proposed construction for "first protocol conversion module converting data received from the central office to an Internet protocol" is "a hardware and/or software module that converts data from a PSTN protocol to an Internet protocol."  The plaintiff's proposed construction for "second protocol conversion module converting data received from the public computer network from Internet protocol to a PSTN protocol" is "a hardware and/or software module that converts data received from the public computer network from an Internet protocol to a PSTN protocol."

The court rejects the defendants' contention that Section 112(6) is invoked by the use of the term "module."  The relevant limitations do not use to word "means" and therefore a presumption applies that they are outside the scope of Section 112(6).  The defendants have not rebutted that presumption in this case.  The court therefore defines the term "first protocol conversion module converting data received from the central office to an Internet protocol" to mean "a hardware and/or software module that converts data from a PSTN protocol to an Internet protocol," and the term "second protocol conversion module converting data received from the public computer network from Internet protocol to a PSTN protocol" to mean "a hardware and/or software module that converts data received from the public computer network from an Internet protocol to a PSTN protocol."

## H.    placed from said first telephone set

The plaintiff contends that no construction of this term is required.  The defendants' proposed construction of this term is "placed from a standard telephone (without requiring additional user equipment, *e.g.*, a computer or a modem)."  The defendants tersely base their proposed construction on a passage from the specification, and a comment from an interview summary dated

May 6, 1997.  The court has carefully reviewed the patentee's specification, as well as the interview summary and  corresponding office action and response.  *See* Defendants' Response at A244-73. In view of the intrinsic record, the court rejects the defendants' proposed construction and defines "telephone set" to mean a "telephone."  *See* Defendants' Response at A270 (January 29, 1997 Amendment and Response to Office Action).

**I.      telephone network interface device; public switched telephone network interface circuit; voice resources module; determining the least cost routing procedure for routing; a hierarchical search based on information indicative of said second telephone set**

The defendants failed to brief their proposed constructions for the above terms, directing the court instead to the Joint Claim Construction and Prehearing Statement.  *See* Brief of Defendants at 30, n. 8.  The court rejects this approach and declines to construe unbriefed terms.

**5.      Conclusion**

The court adopts the above constructions.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the constructions adopted by the court.

SIGNED this 13th day of June, 2008.

CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE